```
IN THE UNITED STATES DISTRICT COURT
    FOR THE MIDDLE DISTRICT OF GEORGIA
               VALDOSTA DIVISION
```

| | | |
|---|---|---|
| **DONNIS ALFORD ET AL.,** | : | |
| **Plaintiffs,** | : | |
| v. | : | 7:05-cv-78 (HL) |
| **CORDELE FOODS, INC. d/b/a SHONEY'S OF CORDELE,** | : | |
| **Defendant.** | : | |

**ORDER**

**I.  INTRODUCTION**

Plaintiffs in the present case bring suit for intentional racial discrimination they allegedly suffered when they attempted to be seated in a Shoney's restaurant. Defendants filed a Motion for Summary Judgment, which this Court granted in part and denied in part in its September 30, 2007 Order. Before the Court is Defendant Cordele Foods, Inc.'s ("Cordele Foods") Motion for Reconsideration (Doc. 114). Defendant requests that the Court reconsider its denial of summary judgment to Cordele Foods, and in the alternative it seeks a modification to the Court's Order that would make it appealable under 28 U.S.C. § 1292(b). For the reasons set out

below, the Motion for Reconsideration is denied.

## II. ANALYSIS

### A. Standard

A district court retains jurisdiction to revise any order it issues before it adjudicates the rights and claims of all the parties. Fed. R. Civ. P. 54(b). Motions for reconsideration are not, however, to be filed as a matter of routine practice. Local Rule 7.6. The decision whether to grant a motion for reconsideration rests within the sound discretion of the trial court. Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 611 (11th Cir. 1987).

A motion for reconsideration is not an opportunity to re-litigate issues that have already been carefully considered and decided by the court. See Lussier v. Dugger, 904 F.2d 661, 667 (11th Cir. 1990) (stating that in most cases "parties are not entitled to 'two bites at the apple.' " (citation omitted)); Taylor Woodrow Const. Corp. v. Sarasota/Manatee Airport Auth., 814 F. Supp. 1072, 1072 (M.D. Fla. 1993). Instead, the motion should raise new issues, and the party raising those issues should articulate why it failed to raise them previously. See Lussier, 904 F.2d at 667.

### B. Analysis

In the present case, Defendant fails to raise any new issues of fact or law. Instead, it simply reargues the same facts as applied to the same standards the

Court set out in its September 30, 2007 Order. The Court nonetheless addresses each of Defendant's contentions in turn.

### 1. Plaintiff's Conclusory Statements

Defendant first complains that Plaintiff failed to meet its burden to establish its prima facie case of race discrimination because it failed to make specific citation to the reference and made only conclusory statements. Regardless of whether Plaintiffs' failed to conscientiously point out record citations, the Court's review of the record revealed sufficient evidence to support a prima facie case of intentional race discrimination. In the face of that evidence, granting summary judgment was, and is, inappropriate.

### 2. Similarly Situated Comparators

Defendant next disputes that Plaintiffs were able to point to similarly situated comparators. This is an argument that was considered and rejected in the September 30, 2007 Order. As that Order explained, there is evidence that Plaintiffs requested to be seated individually in smaller groups. In addition, it is undisputed that smaller groups of non-minority customers were seated during the time that Plaintiffs were waiting. Finally, Shoney's employees testified that large groups would be seated in smaller groups when they made such a request. Based on these facts, the smaller groups of non-minority patrons who were sat function as comparators for the hypothetical smaller groups of Plaintiffs who were never sat.

Nonetheless, Defendant presses its position that Plaintiffs failed to establish a comparator. It argues that even if Plaintiffs requested to be sat in groups of three,[1] Shoney's would have had to seat thirteen tables of three, and these thirteen tables of three are not similarly situated to the handful of small, non-minority groups that were seated while Plaintiffs waited.

Plaintiffs did not, however, demand to be seated in smaller groups *simultaneously*. It is therefore unnecessary to demonstrate another group of thirteen three-person parties in order to establish a comparator. As the Court noted in its Order on the Motion for Summary Judgment, the purpose of the McDonnell Douglas burden-shifting framework is to eliminate "the most common nondiscriminatory reasons for the plaintiff's treatment." See Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 248, 256 n.8 (1981). In this case, the obvious nondiscriminatory explanation for the way Plaintiffs were treated is that the size of their group required additional preparation before they could be seated. Because Plaintiffs offered to sit separately from each other in smaller groups, and because smaller groups of non-minorities were actually seated while Plaintiffs waited, the size of Plaintiffs' parties is eliminated as a nondiscriminatory reason for the purposes of the McDonnell Douglas framework. Put differently, if Defendant agreed to seat a three-person table of non-minority customers, for example, but refused to seat three of the African American

---

[1] It is unclear why Defendant cites groups of three. For the purposes of illustration, however, the Court also refers to groups of three.

Plaintiffs, then the most common reason for the difference in treatment–the size of the party–is no longer at issue and an inference of discrimination arises under McDonnell Douglas. In this case, there is sufficient evidence of similarly situated comparators. Plaintiffs therefore established a prima facie case of intentional discrimination.

### 3. Legitimate Non-Discriminatory Reason

Defendant contends that it came forward with a legitimate, nondiscriminatory reason for its actions, i.e., that Plaintiffs were not seated due to their disruptive behavior. The Court held that a jury could disbelieve this reason, however, based on testimony that Plaintiffs did not begin to complain until twenty minutes after they had arrived at Shoney's.

Defendant argues that there is evidence that Plaintiffs did, in fact, begin to express their dissatisfaction much sooner. It points to the testimony of a Shoney's employee who stated that the complaints began five to eight minutes into the wait. On a motion for summary judgment, however, the facts are construed in the light most favorable to the non-moving party. Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000). The district court may not make credibility determinations. The testimony of the Shoney's employee therefore may not be credited over the testimony that is more favorable toward Plaintiffs.

Defendant also cites a spliced home video of the events, which very briefly shows some individuals disembarking from a bus at 7:52 a.m. and the arrival of

5

police at 8:12 a.m. This, according to Defendant, demonstrates that the complaints were made less than twenty minutes after Plaintiffs arrived because the police were called in response to this disruptive behavior. That behavior, therefore, would have occurred sometime before the police arrived at 8:12 a.m.

Despite this evidence, however, a jury could still disbelieve Defendant's proffered legitimate, nondiscriminatory reason. First, according to the time displayed on the video, twenty minutes elapsed between the first scene and the arrival of police. First, this period of time obviously roughly corresponds with Plaintiffs' estimates of the beginning of their complaints. Second, based on the evidence currently in the record, the Court cannot conclude that the time on the DVD correctly represents the arrival of the first group of Plaintiffs and the arrival of police: there was absolutely no witness testimony that the individuals shown standing on the bus's stairs at 7:52 a.m. had just arrived, therefore the first scene of the video could have been shot well after Plaintiffs arrived. The length of time that elapsed before Plaintiffs complained is a factual dispute, and the video is simply evidence for the jury to consider in resolving that dispute.

Defendant also claims the evidence shows it has "no aversion to serving African Americans" because prior to Plaintiffs' arrival it served a large group of African American cheerleaders. Def.'s Mot. Recons. at 5. This is not a basis, however, to grant summary judgment when Plaintiffs have demonstrated a prima facie case of race discrimination and rebutted Defendant's legitimate non-

6

discriminatory reason for its treatment of Plaintiff.

### C. Interlocutory Appeal

Because the September 30, 2007 Order is not a final judgment, it is not immediately appealable. Defendant therefore requests a modification of the Order to state that it involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order could materially advance the ultimate termination of the litigation. Such a modification would make the Order appealable under 28 U.S.C. § 1292(b). The Court finds, however, that any grounds for difference of opinion are not substantial and therefore declines to modify the opinion as requested.

## III. CONCLUSION

Defendant's Motion simply reasserts those arguments already made in its original Motion for Summary Judgment. For that reason it is an inappropriate and wasteful use of the procedure governing motions for reconsideration. Filing a motion for reconsideration is appropriate when the court has overlooked a critical fact or relevant case law, or other similar unusual circumstances. It is not designed as an outlet for every disappointed litigant to air their disagreement with the court's order. Filing motions for reconsideration as a matter of routine practice not only violates this Court's Local Rules, but it delays the resolution of cases and reduces the efficiency of the Court.

For the reasons stated above, the Motion is therefore denied.

**SO ORDERED**, this the 8th day of May, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

tch